## No. 7626.

### R. L. BELDEN VS. JOHN HANLON.

One who takes after its maturity a simulated note executed by a husband to defraud his wife and secured by a simulated mortgage on community property, will not be permitted to enforce the note and mortgage to the prejudice of the wife who, before the transfer of the note to its holder, had obtained a judgment against her husband of separation from bed and board, and for a settlement of the community.

A wife separated from bed and board from her husband by valid judgment may proceed by way of third opposition to enforce her claim to one half of the proceeds of certain community property, about being sold under an order of seizure and sale.

While a wife cannot set up any claim to the prejudice of any *real* mortgage, or sale of community property made by the husband before the institution of her suit for separation, she may do so when the alienation was *simulated*.

APPEAL from the Fourth District Court, parish of Orleans. *Houston, J.*

E. K. *Washington* for plaintiff and appellant.

W. E. *Murphy* for defendant and appellee.

E. K. Washington, for plaintiff and appellant, contended :

First—That a wife under the law of Louisiana has no right to assail any sale or mortgage of community property made by the husband *prior* to the institution of a suit by her for separation. C. C. 150; 6 L. 461 ; 2 A. 226. .

Second—That a wife cannot oppose by way of third opposition the foreclosure of a mortgage of community property executed before she sued for a separation. C. P. 105, 396 ; C. C. 2404.

Third—That a third opponent who is not the owner, and has no interest in the mortgaged property sought to be sold under executory

;process, cannot inquire into the validity of the proceeding as between the plaintiff and defendant in the original proceeding. 15 -An. 136.

W. E. Murphy, contra, contended :

That this is an independent action by way of opposition filed in the original proceeding, under Art. C. P. 105, revendicating opponent's rights to the property seized, which plaintiff attempts to destroy under the form of executory process. Claverie vs. Gerodias, 30 A. p. 291. But we are told that article 2404 of the C. C. only gives the wife an action against the heirs of the husband for one half of the property. This article only applies when the community or marriage exists, but when it is severed by judgment of separation from bed and board, or divorce, the reason of the law ceases, and she has her action as decided by this court in the case of Smallwood vs. Prat, 3 R. 132. There are also several objections noted to the introduction of evidence. "Fraud and simulation may be proved by any means in the power of the alleging party." Pendleton vs. Eaton, 23 A. 435. "Conversations and admissions of parties implicated in a fraud or simulation may be given in evidence." Bushnell vs. City Bank, 20 A. 464 ; Lazarre vs. Jacques, 15 A. 599 ; Gordy vs. Lyons, 29 A. p. 4 ; Hoose & Victor vs. Robbins, 18 A. 468 ; Carrollton Bank vs. Cleveland, 15 A. 616 ; Code Napoleon, Art. 271 ; Journal du Palais, tome 4, douzième partie, p. 494 ; Dalloz, tome 10, fo. 206.

---

The opinion of the court was delivered by

MANNING, C. J.  Executory process was taken out by Belden to foreclose a mortgage executed by Hanlon in favour of one Navlo to secure a note for twenty five hundred dollars, of which Belden claimed to be the owner. The date of the mortgage and of the note is March 13, 1878, and the latter is made payable six months thereafter.

Two days after the execution of these instruments, the wife of Hanlon instituted a suit for separation from bed and board against her husband, and for a dissolution and settlement of the community of acquets existing between them, and had judgment therefor early in 1879. Alimony was also allowed but never paid, although several attempts were made to enforce its payment, mainly it appears through rules for contempt.

The executory process was sued out March 19, 1879, and Belden says he bought the note about a month before that date, and consequently five months after its maturity. The property was advertised to be sold on May 3d of same year. A few days before the sale-day, Mrs. Hanlon filed her third opposition praying an injunction, and through it the sale was arrested.

She alleges that the note and mortgage are pure simulations, executed for the sole purpose of fraudulently depriving her of her interest in the community, and with a knowledge that she was about to institute a suit for its settlement, and for separation—that her husband did not owe Navlo anything, and no money or other consideration was given by him to her husband for the note—that Belden was a party to the scheme, and that he gave no consideration for the note at his alleged purchase, and was fully cognisant of the judgment that had by that time been rendered in Mrs. Hanlon's suit against her husband, and was not only a purchaser after maturity, but had knowledge of the fraudulent origin of the note.

The testimony sustains these allegations. Belden, Navlo, Hogan the notary, were sworn as witnesses. Navlo, a labourer on the levee, pretends to have loaned four hundred dollars to Hanlon, and that was the sole consideration for the note of $2500, the agreement being that he was to discount the note in some way, and hand back the surplus to Hanlon. He tried, but failed to find a purchaser for eleven months, and finally succeeded, the present plaintiff giving him $416 cash, one thousand dollars in State warrants, and three thousand dollars in stock of the Mississippi Valley Mining Company, the mine being located in Colorado. A month afterwards this part of the plaintiff's testimony is corrected by himself, and two thousand dollars is stated to be the correct amount of mining stock that he transferred, and the mine to be located in Utah.

An auctioneer and appraiser of property is sworn as to the value of the property mortgaged, and he says it would not fetch more than twelve hundred dollars, though it is said Hanlon gave four thousand dollars for it. His deed was not produced. The plaintiff knew Navlo only about ten days before he purchased the note, and this process was taken out about a month after his purchase.

It is needless to state more of the testimony. That the object of Hanlon in executing the note and mortgage to Navlo was to interpose an obstacle to the realization by the wife of her interest in the community is patent. That Navlo gave no consideration for the note, and that the whole transaction, so far as he was concerned, was a simulation is equally clear. Up to the time when Belden got possession of the note long after its maturity, there is nothing to redeem it from the taint of fraud. The fact that the note was long overdue should have put him on his guard. He took it subject to all equities. He is a lawyer and knew that. Mrs. Hanlon had then obtained her judgment against her husband, with an injunction forbidding the alienation of his property. We have not been able to resist the conclusion that he knew the purpose of Hanlon, and aided him in its execution. So far as the proof is con-

cerned, the allegations of Mrs. Hanlon touching the complicity of all the parties in the fraud are fully sustained.

But legal objections are raised both as to the form of the action, and the ability of the wife to prosecute it.

An opposition may take place in two cases, 1. when the third opponent pretends to be the owner of a thing which has been seized ; 2. when he claims a privilege on the proceeds of the thing seized and sold. Code Prac. art. 396.

The proof is that the house and lot, seized under the mortgage, is the only property Hanlon has, and that it was bought during the marriage. His wife's judgment, rendered contradictorily with him, had dissolved the community, and awarded to her her share of it. She was therefore owner in a sufficient sense to justify her resort to the proceeding of third opposition.

But at the time the mortgage was executed there was not even a suit for separation and for dissolution of the community. That suit was instituted two days after the date of the mortgage, and we are referred to the exposition of the law long ago made, that the wife has no action against the husband for property of the community sold by him before the institution of a suit for separation. Tourne v. Creditors, 6 La. 459.

This is true, and has been stated with force and precision in Guice v. Lawrence, 2 Annual, 226. The laws of this State have never recognised a title in the wife during marriage to one half of the acquets and gains. As long as the husband lives and the marriage is not dissolved, the wife cannot prevent the husband from disposing of the community property under the pretext that the law gives her one half. The husband is the head and master of the community, and has power to alienate the immovables which compose it by an encumbered title without the consent or permission of his wife. Civil Code, art. 2373 new no. 2404.

Here there was no real alienation, no real mortgage. The form of a mortgage was a device by which it was designed to put an apparent lien and encumbrance on the property which had no real existence. The device was transparent, and has not escaped detection. The wife was properly permitted to prove the simulation of the transaction, and the property remains as if neither note nor mortgage had ever been executed.

The lower court sustained the demand of the third opponent, and accorded the judgment she prayed. The judgment is correct, and is affirmed.

Rehearing refused.