PROVOSTY, J.
Plaintiff instituted this suit in March, 1904, to set aside a judgment of separation obtained by herself against her husband in May, 1897, and to set aside also a renunciation of the community of acquets and gains, made by her after having obtained the judgment. Her grounds are that the judgment was a mere consent judgment, not founded on any of the causes recognized by law as justifying a judgment of separation of property between husband and wife, and amounting to nothing more than putting an »,nd to the community by agreement; that both it and the act of renunciation were consented to by her at the solicitation of her husband and under marital influence, without knowledge of her legal rights, in error of law and fact; that the proceedings have had the effect of depriving her, without consideration and without cause, of her share of the community property, both that already acquired at that time and that subsequently acquired, which was large and valuable; and that, while she acquits her husband of all intention to injure and defraud her (he himself, as she is satisfied, having been ignorant of the effect of the said proceedings) yet, in view of the trust relation which he occupied towards her, and of her having acted entirely at his dictation, said proceedings amount to a constructive fraud upon her.
The defense is: (1) A plea of prescription of one, two, and five years; (2) estoppel; (3) want of status on the part of the wife to maintain this suit, she having removed permanently from this state; (4) and, last, the general denial.
The suit has been brought, after the death of the husband, against his executors, and also against a tutor ad hoc appointed by the court to represent a minor child, issue of the marriage. The sole parties' in interest are the plaintiff and her minor child.
It is a strange suit, where the plaintiff seeks to set aside a judgment obtained by herself; but the circumstances are peculiar, and the court has concluded that the suit is well founded.
John E. Pierce, the deceased husband, came to this state from Wisconsin in 1884, and settled here. He was an intelligent, thrifty, energetic business man, and money maker. His first wife died in 1893. About one year afterwards, on July 26, 1894, he married plaintiff. He had then already accumulated a fortune of between $160,000 and $200,000. Plaintiff lived in Wisconsin, and he married her there, but with the intention of making their home in Louisiana, as they immediately did. She was a widow, 32 years of age, a bright, intelligent woman, with two children, and possessed of some means — the furniture of a well-furnished house and some $11,000 or $12,000 in bank. They were married without prenuptial contract, each retaining possession and control of their own property. The climate of New Orleans not agreeing with plaintiff, she spent little of her time here. 'Some time in 1897, subsequent to the date of the proceedings now complained of, they shifted their matrimonial domicile to Wisconsin. Plaintiff never returned here, but the husband did. He resided here, making occasional trips to Wiscon *93 sin, until, as we gather, the latter part of 1898, when he spent the most of his time in Wisconsin, and only made occasional visits here. He died on April 20, 1902. At the time of the proceedings complained of the minor was 18 months old. At that time Pierce’s affairs were not disordered. On the contrary, he was living within his means, and was making money in his business, and bis investments were prospering.
The petition in the suit for separation of property reads as follows:
“The petition of * * * respectfully represents :
“That she was married to John E. Pierce in the month of July, 1894, in the city of Milwaukee ; that before her said marriage she was possessed of about $40,000 of real estate, $18,-000 of notes, etc., and an interest.in the succession of her previous husband, William Sanderson, amodnting to about $40,000.
“That her said husband, John E. Pierce, is now in possession and has the administration of all her paraphernal property.
“That her said dowery and paraphernal property is in danger, owing to the mismanagement of her husband, and that the conducting of his affairs induces her to believe that his estate will not be sufficient to meet her rights and claims.
“That it is necessary that a judgment of separation of property be rendered herein, and that the community of acquets and gains heretofore existing between them be forever dissolved.
“Wherefore petitioner prays, etc.”
The evidence leaves no doubt at all that not one word of that petition was true.
The act of renunciation of the community of acquets and gains, after referring to the judgment of separation of property, proceeds as follows:
“John E. Pierce does by these presents deliver and transfer unto his said wife, Mrs. Margaret Pierce, all of her paraphernal and separate property, real and personal, which the said Pierce had in his possession or under his administration, all of which the said Mrs. Pierce acknowledges the receipt thereof, and grants him full acquittance therefor.
“The said John E. Pierce further declared that he had no property in his possession which was acquired during the community of acquets and gains above referred to, and that the said community has met with several serious losses, and that by reason thereof the same is indebted unto the said John E. Pierce in a considerable sum, all of which facts the said Mrs. Margaret Pierce acknowledges, and therefore renounces to the said community of acquets and gains.”
The evidence leaves no doubt whatever that Pierce had none of his wife’s separate property in his possession, that the community was not indebted to him, and that it had suffered no losses, except through betting on horse races, and that these losses, though large, had not been greater than he could afford out of his income, since he had, as a matter of fact, not only met'them out of his own income and lived, but invested money besides.
The only evidence offered in support of the separation suit was that of one witness, who testified that Pierce had told him that he spent about $10,000 a year in maintaining a racing stable and in bets on horse races, but that that was his diversion, and he could afford it; it was his hobby, and if he spent it he did not injure any one; that he was making money, and that that was the only thing he spent money on.
There can be no doubt at all that the separation suit was groundless.
Plaintiff appeared as a witness in her own behalf. Her testimony is consistent with, and in fact corroborated by, all the other evidence in the case, except on one point, which will be referred to presently. Her statement is that the sole cause of ¡resorting to the separation proceedings was that at that time her health was not good, and it was feared she might die, and that, in that event, the rights of the minor child might hamper the husband in the real estate business, which, both on his own account and in partnership with Mr. Peter Gallagher, he was then engaged in.
It is impossible to read plaintiff’s full lengthy, and detailed statement without being impressed with its perfect honesty.
The lawyer employed and paid by the husband to bring the suit sent his office boy to her home with the petition for her signature; and she signed it without reading it; and this is literally all she knew about the suit. The same lawyer, who was also a notary, *94 came to her house with the act of renunciation, and she signed it. She remembers signing the petition in the presence of the lawyer and her husband, and she does not remember signing the act. Evidently the one signing made an impression upon her mind (owing, probably, to the presence of the lawyer), and she remembers it; whereas, the other, which may have been nothing more than the putting of her name to' a paper presented to her by her husband, made no impression upon her mind, and as a consequence she does not remember it, and she has sub-' stituted thé petition to the act as being the paper which she signed. The utmost trust and confidence existed between her and her husband. Her perfect faith in him is not shaken to this day. She is satisfied to-day that he himself was not aware of the prejudicial effect the proceedings might have upon her rights.
Mr. Gallagher, one of the executors, and an unfriendly witness, testifies that Pierce told him that he (Pierce) and Mrs. Pierce had agreed to have a separation of property.
There can be no doubt that the proceeding was nothing more than an attempt to dissolve the community by agreement. As such it was a nullity, under the textual provision of Code, art. 2427, and the sole question must be as to whether the plaintiff is cut off from invoking the nullity by any of the special defenses contained in the answer — want of status, estoppel, and prescription — or by that of ratification, urged for the first time in the brief.
The defense of want of status is not pressed, and is without merit. No other court, here or elsewhere, could extend the relief sought.
The estoppel is not pressed in the brief, but was insisted on in the oral argument. It was there said that, after having taken the chances of the proceedings inuring to her benefit, plaintiff was precluded from repudiating them, now that they had turned to her disadvantage. But counsel did not point out,' and the court cannot discover, how the.pro*ceedings could possibly have inured to the benefit of plaintiff. She had brought no ■ dowry in marriage, her husband owed her ■ nothing, she had no separate industry of her own whose earnings might ,be. endangered,she was administering separately■ her-para-phernal property, and she would have been under no obligation to share any of the losses that might have befallen the community.Moreover, there was not the slightest rea-’ son for supposing that the husband would not • continue to prosper, as he had been ^doing in the past. -. ■
The ratification is said to- have resulted from plaintiff’s silence and inaction during-the 23 months which elapsed between-; the death of her husband and the bringing of .the present suit. But, in the first place, -ratification is a matter of actual consent, and a mere delay of 23 months in the institution of a suit, such as the present one, involving large interests, is not sufficient, of itself alone, unattended by circumstances indicative of waiver and acquiescence, to establish such-an actual consent; and, in the second’ place, the evidence shows that plaintiff did not become advised of the situation from which-she is now seeking relief until June; 1903,’ only 9 months before the institution of'her suit. Such is her positive testimony; and for overcoming it defendant has nothing to" offer, except vague inferences entirely insufficient for the purpose.
So far as prescription is concerned,--it' is inaxjplicable to such a suit as the present one. This is not a suit to set aside a judgment on the ground of fraud, but it is a suit to have the court declare that certain judicial proceedings, purporting to be a suit in-'sepa- - ration of property, were in reality a voluntary-1 separation of property, and, as such, incapable of producing any legal effects. What the; court is asked to do is, not so much-to revoke > .'or set aside a judgment, as to pronounce/,that-; *95 a certain judgment is such only in appearance, not in reality. Prescription does not apply to a suit en declaration de simulation; and. by analogy, on the principle that a post-nuptial agreement of the spouses to be separate in property is a mere nullity, a thing existing only in appearance, it has been held in' two cases that, in like manner, prescription does not apply to a suit for the setting aside of such a voluntary separation. Dennistoun v. Nutt, 2 La. Ann. 483; Hayden v. Nutt, 4 La. Ann. 65. True, those were suits by creditors; but for invoking this nullity the Code places the wife on the same footing with creditors. The language is that “every voluntary separation of property is null, both as respects third persons and the husband and wife between themselves.” Article 2427. Considering this emphatic declaration of the Code, a notarial voluntary separation would, undoubtedly, be considered so radically null that it. could be unceremoniously brushed aside whenever and wherever it was sought to be brought up against the wife. If so, why not, also, a similar voluntary separation by means of judicial proceedings. The only difference between the two cases is that in the one the consensual character of the act appears on the face of the proceedings, whereas in the other it has to be shown aliunde; in other words, the nullity is as radical in the one case as in the other, the only difference being in the evidence. In the two eases of Dennistoun v. Nutt and Hayden v. Nutt, just cited, the voluntary separation was in the form of a judgment.
The present action is exceptional and peculiar, in that the husband had no creditors at the time of the separation, and that therefore the suit in separation could not possibly have been intended to operate as a fraud upon creditors or upon the law. No consideration growing out of possible injury to third persons stands in the way of the relief now sought, so that the matter resolves itself purely and simply into whether, because a consensual dissolution of the community has been accomplished by means of a judgment and an act of renunciation, the courts are powerless to relieve the wife from its effects. When thus put, the question answers itself.
Judgment affirmed.