## EXPOSITO v. LAPEYROUSE.
### No. 2125.

Court of Appeal of Louisiana. First Circuit.

May 8, 1940.

Elton A. Darsey, of Houma, for appellant.

Ellender & Wright, of Houma, for appellee.

OTT, Judge.

Owing to marital differences between herself and her husband, Calvin Martin,

the plaintiff left her said husband on August 2, 1937. A little over two weeks later, on August 18th, the husband executed a deed to the defendant, Gustave J. Lapeyrouse, a brother-in-law, conveying to the latter three certain lots of ground, on one of which was located the residence of the spouses, all of said property being community property belonging to said plaintiff and her said husband. The consideration set forth in the deed was $1,475 cash and the assumption by said Lapeyrouse of a mortgage on the property of $400.

On October 6, 1937, Calvin Martin brought a suit against plaintiff, his wife, for a separation from bed and board, based on abandonment. The wife filed an answer and a reconventional demand for a separation from her husband on the ground of cruel treatment. On June 13, 1938, a judgment was rendered in this suit granting the husband a separation from bed and board and rejecting the reconventional demand of the wife for a separation. A new trial was granted and the judgment was amended on December 23, 1938, so as to allow the wife alimony for the support of a minor child left in her possession by the original judgment.

The plaintiff filed this suit against the purchaser of the community property, Lapeyrouse, alleging that the sale of said property to said Lapeyrouse was made by her husband for the purpose of defrauding her of her interest in the community property; that said sale was a simulation, pure and simple, for which her said husband received no consideration and surrendered no possession to the pretended purchaser; and, in the alternative, that the purported act of sale was a fraudulent contrivance consented to and executed by said Lapeyrouse solely to aid and assist her said husband in placing said property beyond her reach in the settlement of her community interest therein. She prays that the said sale be annulled insofar as her half interest in the property is concerned, and that said property be inventoried in the community assets.

This suit was filed on January 30, 1939, and on February 20th following, plaintiff filed a supplemental petition alleging that on January 13, 1939, the said property was transferred by said Lapeyrouse to Davis Martin, a brother of Calvin Martin, her husband, all in pursuance of a scheme and conspiracy on the part of these three to place the property beyond her reach; that the transfer from Lapeyrouse to Davis Martin was likewise a pure simulation without any consideration, the possession of the property remaining in Calvin Martin; that in the alternative, the sale from Lapeyrouse to Davis Martin is fraudulent and in fraud of her rights. Davis Martin was made a party defendant and the same relief asked as against him as was asked for against Lapeyrouse in the original petition.

Both defendants deny that the respective sales to them were fraudulent and without consideration, but both claim that said sales were bona fide and the purchases were made after securing the opinion of an attorney as to the validity of the title.

After trial, judgment was rendered against the plaintiff rejecting her demands. She has appealed.

■ Where the husband on the eve of a suit for separation makes a simulated or fraudulent sale of community property for the purpose of depriving his wife of her community interests in the property, such sale may be set aside at the suit of the wife and the property brought back as an asset of the community. Civil Code, art. 2404; Van Asselberg v. Van Asselberg et al., 164 La. 553, 114 So. 155; Lockhart et al. v. Dickey et al., 161 La. 282, 108 So. 483; Belden v. Hanlon, 32 La.Ann. 85.

Lapeyrouse testified that he knew that Calvin Martin and his wife were not living together when he bought the property from the former; that Martin owed him $297 and wanted to borrow some more money from him, but as he had learned that Calvin Martin wanted to sell the property, he had rather buy the property if he was going to let Martin have any more money; that they agreed on a sale, and he paid Martin $500 more before the sale was passed and paid the balance of the cash later on as Martin needed the money; that he bought the place from his brother-in-law for two reasons. In the first place, his son was thinking of going in the butcher business (Calvin Martin, it appears, had been conducting a butcher business on the property) and he thought it would be a good location for his son. And in the second place, he had rather buy the prop-

erty from his brother-in-law than keep on loaning him money.

Calvin Martin remained in possession of the property for about eleven months after he sold it to Lapeyrouse. Both testified that Martin paid six dollars per month rent for the property. The explanation given by Lapeyrouse for Martin staying in the property is that the former's son decided not to go into the butcher business as times got bad. The property was rented to an employee of an oil company at $25 per month after Calvin Martin moved out. Calvin Martin collected the rent from this lessee for two or three months and gave him a receipt in his own name. The explanation given for this by Lapeyrouse and Martin is that the former lived several miles from the property and the latter some times collected the rent for him. However, according to Lapeyrouse, he collected the rent from this tenant most of the time and he himself rented the property to this tenant.

Calvin Martin testified that at the time he made the sale to his brother-in-law he was contemplating bringing a suit against his wife for a separation, but that he did not know that his wife was entitled to half the property if he got a judgment of separation; that he consulted a lawyer and he told him the property was his and he could sell it. Asked the reason for selling the property, Martin stated: "Because I sold the community to pay what I was owing, and there was nothing left after I got through paying, and when she told me she didn't want nothing to do with me and my trash, I told her I had to do something to pay my debts and that's when I sold it." He further testified that his wife took everything she wanted and did not indicate that she wanted anything out of the place.

Martin testified that he used the money received for the property to pay his debts, including the amount due Lapeyrouse, the mortgage on the property, and several other creditors. He admits staying in the property for eleven months after he sold it and that he paid six dollars per month rent to his brother-in-law. He also admits collecting two or three months' rent for his brother-in-law from the tenant to whom the former rented the property after he moved out. Calvin Martin further testified that he did not know when Lapeyrouse sold the property to his brother, Davis Martin, and that he had nothing to do with that sale.

Davis Martin testified that when he bought the property from Lapeyrouse he knew that his brother Calvin and his wife were having trouble and that a separation had been granted, but he did not know that Calvin's wife intended to make any claim to the property; that he consulted a lawyer who advised him that the property was clear. Both Davis Martin and Lapeyrouse testified that the former paid $2,000 for the property, $1,200 of which was paid in cash and the balance of $800 was paid a few days after the deed was signed. The deed from Lapeyrouse to Davis Martin recites a cash consideration of $2,000. Martin testified that he obtained the balance of $800 from the Bank of Terrebonne and gave the Bank a mortgage on this property. As corroboration of Martin on this point a certified copy of a mortgage from him to the Bank was introduced in evidence. This mortgage is for $970 and is dated four days after he secured a title to the property.

These are the only witnesses who testified in the case other than the plaintiff herself. She would not attempt to fix a date as to when she learned that her husband had sold the place, but did admit that she knew it in October, 1938. She expressed a favorable opinion as to the veracity of Lapeyrouse, but not as to the veracity of her brother-in-law, Davis Martin.

It is obvious that if the testimony of the three persons directly concerned with these two sales is to be believed, these sales were not simulated nor fraudulent. Of course, proof of fraud and simulation in cases of this kind must necessarily depend to a great extent on the surrounding circumstances and the conduct and relations of the parties.

The plaintiff is relying on three principal circumstances to prove fraud and simulation in the two sales: (1) the fact that her husband sold the property just before he filed a suit against her for a separation; (2) the fact that the three persons involved in the two sales were brothers and a brother-in-law; and (3) the further fact that Calvin Martin remained in possession of the property for some eleven months after he sold it and thereafter collected two or three months'

rent from another tenant placed in the property by Lapeyrouse.

On the first point, we think that the reason given by Calvin Martin for selling the property is plausible and reasonable. He owed some debts and needed more money, and besides, as he states, his family being broken up, he had no special need for the property. On the second point, while the fact that the sales were made under circumstances as existed in this case among three close relatives' might create a suspicious circumstance, yet this fact does not give rise to a presumption of fraud. The relations of Calvin Martin and his brother-in-law had been intimate as is shown by the fact that the latter had helped him in his butcher business. The explanation given by Lapeyrouse as to why he bought the property is reasonable, as well as the reason he gave for selling it to Davis Martin.

And on the last point, while as a general rule the fact that a vendor remains in possession of the property creates a circumstance requiring explanation when the sale is attacked as in this case, yet we think the explanation given by Calvin Martin and Lapeyrouse as to why the former remained in possession of the property for several months is not unreasonable. Martin paid rent, and while this rent was out of proportion to the value of the property, it is not unusual for close relatives to lease their property to each other for a much smaller rent than that charged third persons. Calvin Martin states that he remained in the property only long enough for his brother-in-law to get a regular tenant after the latter decided that his son was not going to use the property for a butcher shop.

. Objection was made by counsel for plaintiff to any evidence tending to show that the consideration for the two sales was paid in a manner and at a time other than as recited in the deeds, that is, in cash at the time of the sales. This objection was properly overruled as there is no violation of the parole evidence rule in showing by parole that the consideration recited in the deed was paid in a different manner and at a time other than that on which the deed is executed where such a deed is attacked as a simula-

tion or as fraudulent. Citizens' Bank & Trust Company v. Willis et al., 183 La. 127, 162 So. 822.

Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of the appellant in both courts.