ALEXANDER RUTHVEN, Appellant, v. BECKWITH & DE GROAT, Appellees.

84   715<br>f142  162

1. **Attachment:** REMOVAL OF DEBTOR FROM COUNTY: PARTNERSHIP: RESIDENCE. A partnership has a residence in the county where its place of business is situated, and, if about to remove permanently from such county, and refuses to pay or secure its creditors, is subject to attachment upon that ground, though neither of the individual partners reside in said county.

2. ———: ———: DEMAND: EXCUSE. A creditor may be entitled to an attachment of his debtor's property upon the above ground without a previous demand for payment, where, from the previous conduct of the debtor, and the circumstances of the case, it appears that such demand would have been useless.

3. ———: WRIT WRONGFULLY ISSUED: DAMAGES. Damage to attached property, resulting from the failure of the officer making the levy to take reasonable and ordinary care of the same while in his possession, cannot be recovered in an action on the attachment bond because of the wrongful suing out of the attachment.

4. ———: ———: ———: EVIDENCE. Evidence of the financial condition of the attachment defendant at the time of suing out of the attachment, though not known to the plaintiff, is admissible, under the issue of the wrongful issuance of the writ, as tending to show the truth or falsity of the charge of intent to defraud creditors.

5. ———: ———: ———: ———. Where the attached property has been sold by the sheriff, the measure of the attachment defendant's recovery upon the bond is the value of the property at the time it was taken, less the amount of the proceeds of such sale credited upon his indebtedness. Depreciation in the property on account of the weather in such case is immaterial, unless it is attempted to fix the value by the price at which the property was sold.

6. ———: ———: ———: ———. A hay press having been seized with other attached property, *held*, that evidence as to the number of tons of hay per day pressed into it after its release, and as to whether the press would depreciate more by being used than by standing, was properly received.

7. ———: ———: ———: ———. The business of the attachment defendant being the baling and shipping of hay, *held*, that evidence as to delays in getting cars and shipping cars was admissible as showing the general course of business, and as bearing upon the question of intent to defraud. (ROBINSON, J. *not concurring*).

UPON REHEARING.

Attachment: WRIT WRONGFULLY ISSUED: DAMAGES: INJURY TO PROPERTY WHILE IN POSSESSION OF OFFICER. In an action to recover damages for the wrongful suing out of an attachment, the plaintiff is entitled to recover for damage to the attached property resulting from the failure of the officer making the levy to properly care for the same while in his possession. (GIVEN, J. *dissenting*).

*Appeal from Palo Alto District Court.*—HON. GEORGE H. CARR, Judge.

THURSDAY, JUNE 5. 1890.

ACTION aided by attachment to recover upon a promissory note executed by the plaintiff with, and as surety for, the defendant firm, Beckwith & De Groat; which note the plaintiff paid after maturity. The plaintiff asked attachment and judgment against the partnership of Beckwith & De Groat and the individual members thereof, M. J. Beckwith and Z. De Groat. The defendants admitted they were a partnership and their liability upon the note, and alleged by way of counter-claim that the attachment was wrongfully and maliciously sued out, and levied upon their property to their damage, which they ask to recover.

The plaintiff in reply denies that the attachment was wrongfully or maliciously sued out, and denies that the defendants were damaged thereby. The case was tried to a jury and certain special findings with a general verdict in favor of the plaintiff for one dollar returned. The plaintiff's motion for new trial being overruled, he appeals.—*Reversed.*

*McCarty & Linderman*, for appellant.

*Parker & Richardson* and *E. B. Kelly*, for appellees.

GIVEN, J.—I. One of the grounds upon which the attachment was sued out was, "that the defendants are about to remove permanently out of the county, and have property therein not exempt from execution, and that they refuse to pay or secure the plaintiff."

1. ATTACHMENT: removal of debtor from county: partnership: residence.

The court instructed the jury that as neither Beckwith nor De Groat were residents of the county at the time the attachment was sued out, and as the plaintiff made no demand upon the defendants for payment or security after he took up the note and before the commencement of this action, said ground for the attachment was unauthorized, "and the plaintiff had no right to an attachment upon this ground." The theory of this instruction is, that J. M. Beckwith and Z. De Groat were the only parties defendant to the action, and as neither resided in the county there could be no removal out of the county, such as to entitle the plaintiff to an attachment on that ground.

Under the law that partnership is a legal entity, it may sue and be sued, and for many purposes is as distinct from the persons composing it as they are from each other. The right to sue the partnership as such is not questioned, nor is the jurisdiction of the court wherein the action was brought. If the partnership may be sued, it must have a residence, a place where it can be sued. It appears without conflict that this

partnership was engaged in the business of buying, baling and shipping hay for sale; that its only place of business was at Ruthven, in Palo Alto county; and that the note in suit was executed and payable at Ruthven, in connection with said business. It is provided by the statute that "when a corporation, company or individual has an office or agency in any county for the transaction of business any suits, growing out of or connected with the business of that office or agency, may be brought in the county where such office or agency is located," Code, sec. 2585. In *Fitzgerald v. Grimmell*, 64 Iowa, 261, wherein this section was under notice, it is said, "a partnership is a legal entity, known to and recognized by the law, and, for jurisdictional purposes, it may be considered as having a residence in every county in which it does business, though neither partner resides in such county." To hold otherwise would give to partnerships an immunity from attachments that is not accorded to natural persons. We think this partnership is shown to have been a resident of the county of Palo Alto, in the sense in which partnerships may acquire residence, at the time the attachment was sued out, and, therefore, could have removed permanently out of the county so as to entitle its creditors to attachment against its property.

II. One of the requisites of this ground for attachment is, that the party removing "out of the county has property therein not exempt from execution, and that he refuses to pay or secure the plaintiff." According to the instruction the plaintiff was not entitled to an attachment on this ground, because he had not demanded payment or security after he paid the note to the bank, and before he commenced this action. True there was no money due to the plaintiff until he paid the note to the bank, but he had urged and demanded of the defendants that the note be paid or secured to the bank so as

2. ——: ——: demand: excuse.

to release him.   This demand was refused, not only positively, but in very offensive terms, by one member of the firm, and with silence by the other. . There was no reason why they would pay or secure the plaintiff any more than the bank; and the manner in which they refused to pay or secure the bank indicates very clearly that they would not pay or secure the plaintiff.   The law does not require vain and useless things; a refusal to pay or secure the plaintiff may satisfactorily appear in such a case without a direct demand; to hold a formal demand for payment or security was a necessary prerequisite to suing out the attachment in this case on the ground of removal, etc., would be requiring a useless thing, and tend to defeat the remedy by attachment.   The plaintiff urged and demanded of Beckwith that the firm pay or secure the note to the bank, which Beckwith positively and in offensive terms refused to do.   The plaintiff got the bank to draw a draft on De Groat for the same, the plaintiff writing him a letter fully explaining the transaction.   The letter, though received, was not answered, and the draft was returned unpaid.   These demands occurred after the maturity of the note, and a short time before the bringing of suit. Surely this was a refusal to secure the plaintiff by satisfying the bank, and left no reason to believe that payment or security would be made to the plaintiff on further demand.   In this connection see *Oswego Starch Factory v. Lendrum*, 57 Iowa, 577; *Kimball & Mitchell v. Bryant*, 56 Iowa, 637.   We think the court erred in this fourteenth paragraph of its instructions, and in not submitting said grounds for attachment to the consideration of the jury.   It follows from these conclusions that the giving of the other instructions based upon that view of the law was also erroneous in so far as they withdrew said grounds for attachment from the consideration of the jury.

III. In directing the jury as to the measure of recovery of actual damages, the court instructed them

that it was the duty of the sheriff to take reasonable
and ordinary care of the property while in his posses-
sion, and that, if he failed to take such care, and by
reason thereof the property was injured or destroyed,
the plaintiff would be liable to the defendants therefor
on the attachment bond, if the attachment was wrong-
fully sued out. Code, section 2961 provides for a
recovery on the bond, in case the attachment is wrong-
fully sued out, of "the actual damages sustained." In
*Campbell v. Chamberlain*, 10 Iowa, 340, it is said: "In
such actions the plaintiff is entitled to recover as dam-
ages all losses and expense incurred by him in making
defense to the attachment proceeding, and such losses
as he may have sustained by being deprived of the use
of the property attached, and any injury thereto by its
loss or depreciation in value." See also *Lowenstein v.
Monroe*, 55 Iowa, 82. In *Plumb v. Woodmansee*, 34
Iowa, 119, it is said, "the rule of the law is well estab-
lished that, in cases of tort, it is necessary for the party
complaining to show that the damages in respect to
which he proceeds are the legal and natural conse-
quences of the wrongful act imputed to the defend-
ant." The wrongful act imputed to the defendant to
the counter-claim (the plaintiff in this
action) is that he wrongfully sued out the
attachment, and it is only for the legal
and natural consequences of that act, if wrongful, that
he is liable. The bond is to indemnify against the
wrongful act of the plaintiff, and not of another. The
damages contemplated in the giving of the bond were
only such as legally and naturally result from seizing
and holding the defendants' property. It being the
duty of the sheriff to take reasonable and ordinary care
of the property, damages resulting from the want of
such care, are neither legal nor natural consequences of
the attachment, but of the negligence of the sheriff, for
which he, and not the plaintiff, is liable. We think
the court erred in holding that the defendants were

entitled to recover for loss or injury to the property resulting from the negligence of the officer while holding it under attachment.

IV. One of the grounds specified for a new trial is misconduct of the jury in making up their verdict. As it follows from the conclusions already stated that the judgment of the district court must be reversed, and as the misconduct complained of will not occur upon a re-trial, it is unnecessary that we further notice that complaint.

V. Numerous exceptions were taken by the plaintiff to rulings of the court, admitting and rejecting testimony, which it is necessary to notice, as the same questions may arise on a re-trial.

The principal contentions were as to the truth or falsity of each of the grounds specified for attachment, 4. —: —: —: whether the plaintiff had reason to believe
evidence. them, or either of them, to be true, and as to the amount of damage. Testimony as to the financial condition of the defendants, though not known to the plaintiff, was admissible as tending to show the truth or falsity of the charge of intent to defraud creditors. The testimony of De Groat as to what the firm was doing in its business was competent only so far as it expressed their intentions as known to the plaintiff. *Setz & Co. v. Belden*, 40 Iowa, 53.

VI. The hay having been sold by the sheriff, the measure of the defendant's recovery therefor was 5. —: —: —: the value at the time it was taken, less the
—. amount of the proceeds credited on their indebtedness. Testimony as to the effect the weather had upon the hay after it was taken was immaterial, unless upon cross-examination the price at which it was sold was called out as tending to fix its value when taken.

VII. In connection with the testimony as to rental value of the hay press, we think it was proper to inquire

Vol. 84—46

6. —: —: —: whether the press would depreciate more by being used than by standing idle. The capacity of the press being a proper subject of inquiry, there was no error in permitting testimony as to the number of tons per day pressed into it after its release. While the levy shows. no hay designated as "distillery hay," testimony shows that the poorer or damaged hay was thrown back and designated as such. It was included in the levy, and there was no error in permitting proof of its value. The plaintiff should have been permitted to show by Rosecrantz what amount the defendants owed the latter on the hay press, not only as a proper cross-examination, but because there was testimony tending to show that the plaintiff had learned of this indebtedness before suing out the attachment. *Dent v. Smith*, 53 Iowa, 266.

VIII. The testimony of Beckwith as to delays in getting cars and shipping hay was admissible as 7. —: —: —: showing the general course of business, and the bearing upon the question of intent to defraud. The evidence of Giddings in regard to a letter with reference to De Groat's financial standing was incompetent and immaterial, unless shown to have been communicated to the plaintiff. We think it is not so shown, and, therefore, should have been excluded.

The plaintiff's offer of a notice served upon the sheriff by Rosecrantz claiming the hay press was immaterial; it did not rebut anything in the testimony of Rosecrantz, and, occurring after the attachment was sued out, could not have influenced the belief of the plaintiff.

It follows from the foregoing conclusions that the judgment of the district court must be REVERSED. (ROBINSON, J., *not concurring*.)

TUESDAY, JANUARY 29, 1892.

UPON REHEARING.                     .

ACTION, aided by attachment, to recover an amount
paid by the plaintiff in satisfaction of a promissory
note executed by him and as surety for the firm of
Beckwith & De Groat, composed of M. J. Beckwith and
Z. De Groat. The defendants answered, admitting the
partnership and the indebtedness, and alleged, by way
of counter-claim, that the attachment was wrongfully
and maliciously sued out, to their damage, which they
ask to recover on the bond. The plaintiff in reply .
denied that the attachment was wrongfully or malic-
iously sued out, or that the defendants were damaged
thereby. There was a verdict and judgment in favor
of the plaintiff for ten dollars, from which the plaintiff
appeals. The case was submitted, and an opinion
announced. A rehearing being granted, further argu-
ments are presented, and the case again submitted.
*Reversed.*

*McCarty & Linderman*, for appellant.

*Parker & Richardson* and *E. B. Kelly*, for appel-
lees.

GIVEN, J.—I. One of the grounds upon which the
attachment was sued out was "that the defendants are
about to remove permanently out of the county, and
have property therein not exempt from execution, and
that they refuse to pay or secure the plaintiff." The
court instructed the jury that as neither Beckwith nor
De Groat were residents of the county at the time the
attachment was sued out, and as the plaintiff made no
demand upon the defendants for payment or security
after he took up the note and before the commence-
ment of this action, said ground for the attachment

was unauthorized, and the plaintiff had no right to an attachment upon this ground. The theory of this instruction is that J. M. Beckwith and Z. De Groat were the only parties defendant to the action, and, as neither resided in the county, there could be no removal out of the county such as to entitle the plaintiff to an attachment on that ground. Under the law that a partnership is a legal entity, it might sue and be sued, and for many purposes is as distinct from the persons composing it as they are from each other. The right to sue the partnership as such is not questioned, nor is the jurisdiction of the court wherein the action was brought. If the partnership may be sued, it must have a residence,—a place where it can be sued. It appears without conflict that this partnership was engaged in the business of buying, baling and shipping hay for sale; that its only place of business was at Ruthven, in Palo Alto county; and that the note in suit was executed and payable at Ruthven, in connection with said business. It is provided in the statute that, "When a corporation, company or individual has an office or agency in any county for the transaction of business, any suits growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located." Code, sec. 2585. In *Fitzgerald v. Grimmell*, 64 Iowa, 261, wherein this section was under notice, it is said: "A partnership is a legal entity, known and recognized by the law, and for jurisdictional purposes it may be considered as having a residence in every county in which it does business, though neither partner resides in such county." To hold otherwise would give to partnerships an immunity from attachments that is not accorded to natural persons. We think this partnership is shown to have been a resident of the county of Palo Alto, in the sense in which partnerships may acquire residence, at the time the attachment was sued

out, and therefore could have removed permanently out of the county, so as to entitle its creditors to attachment against its property.

II. Another requisite of this ground for attachment is that, "they refuse to pay or secure the plaintiff." According to the instructions, plaintiff was not entitled to an attachment on this ground, because there was no demand or refusal after he paid the note to the bank. It is true there was no money due to the plaintiff until he paid the note upon which he was surety, but the defendants did owe it to him that they secure him as their surety by paying the note at its maturity or by securing his release in some other way. The evidence tends. to show that, at or soon after the maturity of the note, the plaintiff demanded of Mr. Beckwith that they pay or secure the note to the bank, so as to release him, which he positively refused to do; also that the plaintiff drew a draft on Mr. De Groat for the amount of the note and had the bank at Ruthven send it through the Preston bank, and at the same time mailed a letter to Mr. De Groat, explaining to him fully why the draft was sent, and saying that he wanted this note paid. The draft was returned not paid, and the letter, though received, was not answered. It was after these refusals upon the part of both the defendants to secure him that the plaintiff paid the note and commenced this action. Such refusals were sufficient to entitle the plaintiff to an attachment so far as refusal to secure is concerned. We think the court erred in not submitting this ground of attachment to the jury, and in giving the instructions with reference thereto. As for this reason the judgment of the district court must be reversed, we will only notice such of the other questions discussed as may arise on a re-trial.

III. In directing the jury as to the measure of recovery of actual damages, the court instructed that

it was the duty of the sheriff to take reasonable and ordinary care of the property while in his possession, and that, if he failed to take such care, and by reason thereof the property was injured or destroyed, the plaintiff would be liable to the defendants therefor on the attachment bond, if the attachment was wrongfully sued out. This statement of the law meets the approval of the majority of this court. In the mind of the writer, damages resulting from negligence of the sheriff are not within the contemplation or conditions of the bond, and are not recoverable against the plaintiff thereon. For the views of the court on this subject, see *Blaul v. Tharp*, 83 Iowa, 665.

IV. Several exceptions were taken by the plaintiff to rulings admitting and rejecting testimony. As the same questions may arise on a re-trial, we proceed to notice them. Testimony as to the financial condition of the defendants, though not known to the plaintiff, was admissible as bearing upon the charge of intent to defraud creditors. The defendant De Groat was asked what arrangements, if any, they had made prior to April 21, 1888, to dispose of their property or convert it into money; to which he answered that they had no arrangements, only buying and pressing hay and getting it to market, and returning the money to pay debts. This question did not call for the intention or purpose of the defendant with respect to the property as in *Selz v. Beldin*, 48 Iowa, 452. The answer is in effect that they had no arrangements, only in the usual course of trade. We think the plaintiff's objection was properly overruled.

The hay having been sold by the sheriff, the measure of the defendants' recovery therefor was its value at the time it was taken, less the proceeds of sale credited on the indebtedness. Testimony as to the effect the weather had upon the hay after it was taken was immaterial. If the price at which it was

sold was called out as tending to show its value when taken, then testimony as to the effect of the weather was admissible.

It was proper to inquire whether the press would depreciate more by being used than by standing idle, and, as its rental value was material, it was proper to show its capacity by showing the number of tons per day pressed in it after its release. What is spoken of as "distillery hay" was included in the levy, and proof of its value was proper. The testimony of Beckwith as to delays in getting cars and shipping hay was admissible as showing the general course of business as bearing upon the question of intent to defraud. Mr. Giddings was permitted to testify, over the plaintiff's objection, to the receipt and contents of a letter from Mr. Bartholomew, saying that Mr. De Groat was good for five or ten thousand dollars, upon the statement of counsel that they expected to show that the contents of this letter were made known to the plaintiff. The defendants failed to show that this letter came to the knowledge of the plaintiff, and the plaintiff omitted to thereafter call the attention of the court to that fact. As this need not occur on a retrial, we do not notice it further. The plaintiff's offer of a notice served upon the sheriff by Rosecrantz claiming the hay press, was immaterial, as it did not occur until after the attachment was sued out.

For the reason stated in the second paragraph of this opinion, the judgment of the district court is REVERSED.