**BALLESTER v. DESCARTES, Treasurer of Puerto Rico, et al.**

**No. 4459.**

United States Court of Appeals
First Circuit.
April 18, 1950.

824

Charles B. Rugg, Boston, Mass. (J. J. Ortiz Alibran, Rafael O. Fernandez, Guillermo Silva, all three of San Juan, P. R., and Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., with him on brief), for appellant.

I. Henry Kutz, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack and Helen Goodner, Special Assistants to the Attorney General, Mastin G. White, Solicitor, Department of the Interior, Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of the Interior, and Shirley Ecker Boskey, Attorney, Department of the Interior, Washington, D. C., with him on brief), for appellees.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

We are concerned here with the individual taxability of a partner in a Puerto Rican commercial partnership upon his fixed share of partnership profits determined for the calendar years 1941 and 1942, which profits were placed by decision of the partners in special firm accounts and neither distributed to the partners nor credited to their respective personal accounts. The Supreme Court of Puerto Rico has upheld the tax, under its interpretation of the insular income tax law; and it has further held that the tax as so applied is not in violation of the due process and equal protection clauses of § 2 of the Organic Act; 39 Stat. 951.

By deed executed in 1915 and duly recorded in the Commercial Register, Francisco Ballester y Ripoll and the present appellant, Miguel Ballester y Ripoll, constituted a regular general commercial partnership under the firm style "Ballester Hermanos". Since then, the agreement has been extended from time to time, and modified in some details. From the outset, each of the partners has been denominated a

managing partner; and each partner receives an annual salary for his personal services to the partnership. It is provided that "the partners shall distribute the profits in the following proportion:—Sixty per cent shall correspond to partner Francisco Ballester and forty per cent to the other partner, Miguel Ballester, and the losses, if any, should be distributed in the same proportion."

A further provision with reference to profits is as follows: "It is understood that at least each partner shall capitalize the sum of two thousand five hundred dollars annually, provided they have earned that sum in addition to the amounts monthly taken for their personal expenses.—The partners shall also agree in connection with the date on which they shall distribute the profits obtained, bearing in mind the funds which the partnership has at hand."

In his individual income tax returns for 1941 and 1942, appellant Miguel did not include in gross income his 40 per cent share of the partnership profits determined for those years and retained in partnership funds, in special reserve accounts, by decision of the two partners. The Treasurer of Puerto Rico determined deficiencies against the taxpayer, as a result of ruling that there should have been included in gross income the sum of $27,119.82 for 1941, and the sum of $64,459.48 for 1942, as representing taxpayer's share in said undistributed partnership profits. On appeal to the Tax Court of Puerto Rico that court, in a 2-1 decision, held that the above sums of $27,119.82 and $64,459.48 did not constitute part of the taxable income of the partner Miguel for the respective years in question. The Supreme Court of Puerto Rico, reviewing the case on certiorari, unanimously reversed the Tax Court and upheld the Treasurer.

The Income Tax Act of 1924, Laws P.R. 1925, p. 400, in § 2, defined and differentiated the terms "corporation" and "partnership". Section 4(a), after defining the term "dividend" as relating to distributions made by a corporation to its shareholders out of its earnings or profits, concluded with the following provision: "and the

term 'profits' [beneficios in Spanish original] means any distribution made by a partnership to its members and participants out of its earnings obtained after February 28, 1913."

Sections 12 and 13 imposed a normal tax and graduated surtaxes upon the net income of individuals; the term "net income", as stated in § 14(a), meaning "gross income as defined in section 15," less the deductions allowed by §§ 16 and 19. Section 15(a) defined "gross income" in sweeping terms (similar to the general definition of that term in § 22(a) of the Federal Internal Revenue Code, 26 U.S.C.A. § 22(a) ) as including "gains, profits, and income * * * of whatever kind and in whatever form paid," derived, among other things, from "profession[s], * * * businesses, commerce, or sales, or dealings in property * * * also from interest, rent, dividends, partnership profits [beneficios de sociedades, in Spanish original], * * * or gains or profits and income derived from any source whatever; * * * The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer * * *."

Section 28 of the original Act levied a tax of 12½ per cent "upon the net income of every corporation or partnership".

Section 21, entitled "Evasion of Surtaxes by Incorporation", contained a provision similar to § 102 of the Internal Revenue Code, 26 U.S.C.A. § 102, except that it applied both to corporations and partnerships. Subsection (a) of this section provided that "If any partnership or corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its members or shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed," there shall be levied for each taxable year upon the net income of such partnership or corporation an additional tax equal to 50 per cent of the amount thereof. Subsection (b) went on to provide that the fact that any partnership or corporation is a mere holding or investment company, "or that the gains or profits are permitted to accumulate

beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax".

Under the foregoing provisions of law, the Treasurer of Puerto Rico sought to tax to a partner his distributive share of partnership profits though not distributed or placed to his personal credit. Article 90 of his Regulations read in part as follows:

"Art. 90.—Example of Constructive Receipt.—* * * Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the stockholder. The distributive share of the profits of a partner in a partnership is regarded as received by him although not distributed."

The point was litigated in Behn v. Domenech, 49 P.R.R. 790(1936), in which the Supreme Court of Puerto Rico held the above provision of Art. 90 of the Regulations, with reference to taxing to the partners their distributive share of partnership profits, whether distributed or not, was invalid as inconsistent with the terms of the statute. It was stated that the various provisions of the insular tax law placed "partnerships and the members thereof on practically the same footing as corporations and shareholders", in harmony with the Puerto Rican concept of a partnership "as a separate, distinct and independent legal entity". Thus, § 21 of the insular law imposed upon both partnerships and corporations an additional penalty tax of 50 per cent of their net income when the partnership or corporation is formed or availed of for the purpose of preventing the imposition of the surtax upon its members or shareholders through the medium of permitting its profits to accumulate instead of being divided or distributed. Particular emphasis was put by the court upon the definition of the term "profits" in § 4(a), above quoted, as meaning any *distribution* made by a partnership to its members out of partnership

earnings. "From this statutory definition of the term profits", said the court, "it seems reasonably clear that before partnership profits can become a part of the gross income of an individual partner, as the term gross income is defined by section 15 of the Insular Income Tax Act of 1924, the partnership profits must have been distributed." The court also referred to the provision of § 15 to the effect that the amount of all gains and profits "shall be included in the gross income for the taxable year in which received by the taxpayer," commenting that if this provision were read in connection with the other provisions of the Act, it would seem clear that the words "received by the taxpayer" indicated an intention to tax only income actually received, or at least constructively received, which would be the case if a distributive share of partnership profits has been "credited to the account of the individual partner or otherwise designated and identified as such distributive share on the books of the partnership." Beyond that, the court found no evidence of a legislative intention "to tax a hypothetical income of the individual partner theoretically derived from the undivided profits of the partnership by resorting to the device of a constructive receipt."

It will be observed that the opinion of the Supreme Court of Puerto Rico in Behn v. Domenech, supra, addressed itself, not to the power of the legislature, but to the legislative intent as disclosed on the face of the statute.

In 1941 the legislature, by Act No. 31, Laws P.R.1941, p. 478, enacted a series of amendments to the Income Tax Act of 1924, the evident general purpose being to increase the revenue by raising tax rates, cutting exemptions, and closing loopholes. Section 2(a), defining the term "corporation", was broadened to include a number of associations not previously listed.[1] Similar-

1. The term "corporation", as amended, thus included "limited partnerships [compañías limitadas in Spanish original], joint stock companies, limited liability joint stock companies (sociedades anónimas), private corporations and insurance companies, and any other associations receiving income or making profits taxable under this Act"; in general, any business organization which in like manner as a corporation may continue to exist regardless of changes of membership and whose business is managed by a board or committee acting in a repre-

ly in § 2(a) the term "partnership" was broadened to include, further, "two or more persons, under a common name or not, engaged in a joint venture for profit."[2] important change was made in § 4(a). As previously stated, the term "profits" had earlier been defined in § 4(a) as meaning any *distribution* made by a partnership to its members out of its earnings. The legislature struck out this language stressing the *distribution* of partnership profits to the partners, and inserted as a substitute the following (official English translation): "the term 'earnings' [profits[3]] shall mean any share or right to share in a partnership, which belongs [corresponds[4]] to its partners or participants in each taxable year out of the earnings or profits of any partnership."

Sections 12 and 13 were amended to increase the normal and surtax rates on individuals. Section 15(a) was not amended in any particular now relevant; it still includes in the definition of "gross income" gains derived from dividends and "partnership profits", and it still provides that the gains and profits "shall be included in the gross income for the taxable year in which they were received by the taxpayer". No change was made in § 21 imposing an additional penalty tax of 50 per cent upon the net income of "any partnership or corporation" availed of for the purpose of preventing the imposition of the surtax upon its members or shareholders through the medium of permitting its profits to accumulate instead of being distributed. Section 28

was amended to increase to 17 per cent the tax on the net income of "every corporation or partnership". The legislature left unchanged § 37(c) of the original Act which provided that every corporation or partnership making its income tax return shall append thereto a statement of such facts as will enable the Treasurer to determine the portion of the annual profits of the corporation or partnership "which have been distributed or ordered to be distributed, respectively, to its shareholders or members during such year"; nor was there any change in § 46, providing that every corporation or partnership, when required by the Treasurer, shall render a verified return "of its payments of dividends or profits, stating the name and address of each shareholder or member, the number of shares owned by him, and the amount of dividends or profits paid to him."

In the view of the court below, the crucial change made in 1941 was the new definition of the term "profits" in § 4(a). It pointed out that in its opinion in Behn v. Domenech, supra, it had laid chief stress upon the original definition of profits in that section as meaning any *distribution* made by a partnership to its members, which definition, projected into § 15, warranted the conclusion that "before partnership profits can become a part of the gross income of an individual partner, as the term gross income is defined by section 15 * * * the partnership profits must have been distributed." It concluded, from the new definition of the term "profits" in § 4(a), that the

---

sentative capacity, particularly "voluntary associations, business trusts, Massachusetts trusts, and common law trusts." We are uncertain whether the term "las compañías limitadas", rendered in the English translation as "limited partnerships", refers to the type of organization described in § 122 et seq., Code of Commerce—"las compañías en comandita", and in § 148, Code of Commerce—"las sociedades en comandita".

2. As amended, the term "partnership" was defined as including "civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and

it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

3. In the Spanish original the term to be defined is "beneficio", the word defined in § 4 (a) of the original Act and there translated as "profits". Appellant concedes that the amendment to § 4(a) contains a new definition of the same term, not a definition of a new term, and the court below, in its opinion in the case at bar, took this to be the proper rendition.

4. The word "belongs" in the English text is a translation of the Spanish word "correspondiere" which the Supreme Court of Puerto Rico states should have been translated as "corresponds".

legislature intended to change the law as it had been thus interpreted in Behn v. Domenech, observing "that if the Legislature had intended to leave untaxed the undivided profits of *sociedades*, it would not have changed the definition of the term 'profits.'" The court recognized that giving this interpretation to § 4(a) as amended rendered superfluous, so far as partnerships are concerned, the unchanged provision of § 21(a), because a partnership could no longer be availed of "for the purpose of evading the tax that ought to be imposed on the *socios* for their profits." Also, the court conceded that certain other unchanged sections of the Act, such as § 37 (c) and § 46, had lost some of their significance. But it said that the failure of the legislature to make appropriate corresponding amendments in other sections of the Act, so as to render the Act as amended, in all its parts, a consistent and artistic job of draftsmanship, could not be utilized "to thwart the intention of the legislator to tax to *socios* undistributed profits of *sociedades* as clearly manifested in section 4(a)." The court saw no necessary inconsistency between the amended § 4(a), as so interpreted, and the unamended provision of § 15 (a) providing that gains shall be included in gross income for the year in which *received* by the taxpayer, because "this provision does not bar taxation of income constructively received"; but if there could be said to be any such inconsistency "the later amendment of § 4(a) carves out an exception to this requirement of § 15(a)."

Appellant has submitted an elaborate argument to the effect that the Supreme Court of Puerto Rico has made an erroneous interpretation of the statute. Of course that court is in a much better position than we to appraise correctly the legislative purpose in amending the definition of "profits" in § 4(a). It has a much more intimate appreciation of how the legislative processes in Puerto Rico operate, and it has been accorded the primary function of illuminating the meaning of local legislation and ironing out apparent discrepancies or obscurities in the texts of the local laws. We are clear that this is not a case where the construction of a local statute by the Supreme Court of Puerto Rico should be rejected by us as "inescapably wrong" or "patently erroneous". Bonet v. Texas Co., 1940, 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401; De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384. The interpretation adopted by the court below in this case seems to us "not unsupported by logic or reason." Sancho Bonet v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 510, 307 U.S. 613, 59 S.Ct. 626, 629, 83 L.Ed. 946. Indeed, the striking weakness of appellant's argument on this branch of the case is that he is unable to advance any plausible theory as to what the legislature was driving at in its 1941 amendment of the definition of the term "profits" in § 4(a) if it did not have the purpose which the court below attributed to it. See also Rullan v. Buscaglia, 1 Cir., 1948, 168 F.2d 401, 403, and cases there cited.

Assuming, then, as we think we should, that the Act means what the Supreme Court of Puerto Rico has construed it to mean, the question remains as to the validity of such enactment.

In this connection the chief reliance of the taxpayer is upon Hoeper v. Tax Commission, 1931, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346. In that case, although under the law of Wisconsin a husband had no legal interest or control over the income or property of his wife, the state's income tax statute authorized an assessment against the husband of a tax computed on the combined total of his and his wife's incomes and augmented by surtaxes resulting from the combination. The Supreme Court, over a vigorous dissent by Holmes, Brandeis, and Stone, JJ., held that the tax violated the due process clause. The Court said, 284 U.S. at page 215, 52 S.Ct. at page 122, 76 L.Ed. 248, 78 A.L.R. 346: "We have no doubt that, because of the fundamental conceptions which underlie our system, any attempt by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law as guaranteed by the Fourteenth

Amendment. That which is not in fact the taxpayer's income cannot be made such by calling it income." Since the partnership "Ballester Hermanos" is a legal entity under Puerto Rican law, appellant argues that the partnership income belongs to it rather than to the partners, until the partnership has distributed the profits to the respective partners, or at least unconditionally credited the personal accounts of the respective partners therewith; that to tax the partners on such income before it is so distributed or credited is to tax them on income which is not in fact theirs, which it is said cannot be done under the ruling of Hoeper v. Tax Commission.

We do not stop to speculate whether Hoeper v. Tax Commission would be followed to-day even on its particular facts (cf. Fernandez v. Wiener, 1945, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116, and comment by Douglas, J., concurring, 326 U.S. at page 365, 66 S.Ct. at page 190); for we are entirely satisfied that the case is not controlling on the quite different situation presented in the present record.

Appellant attaches exaggerated significance to the concept of legal personality with which the partnership is endowed under Puerto Rican law. A commercial partnership becomes a legal entity, provided it is established in accordance with the provisions of the Code of Commerce. The agreement must be recorded in the Mercantile Registry before the beginning of business. See §§ 95-98, also §§ 10 and 11, Code of Commerce (1932 ed.) See also § 1560, Civil Code (1930 ed.). If the formalities have been complied with, the partnership, as an artificial person, "may acquire and possess property of all kinds and also contract obligations and institute civil and criminal actions". Section 30, Civil Code. See also §§ 27-29 of the same Code. But this legal personality of partnerships is the creation of the Puerto Rican legislature; and by that act of creation the legislature has not become obligated to pursue the entity concept to the uttermost limit of abstract logic. Because it has offered to partnerships as such the facility of suing and being sued in the firm name, of acquiring property, and of contracting obligations, it does not follow that the legislature must for all purposes draw an opaque curtain between the partnership as an artificial person and the human beings who compose it, so that a partner cannot be deemed to have realized a taxable gain from the partnership business until the partnership has shoved under the curtain to the partner his distributive share of the partnership profits. There is no novelty in what the Puerto Rican legislature has done in taxing to a partner his distributive share of undivided partnership profits. Louisiana, like Puerto Rico, has the civil law concept of the partnership as an artificial legal person distinct from its members. Henderson's Estate v. Commissioner, 5 Cir., 1946, 155 F.2d 310, 314. Yet the Louisiana legislature requires each partner to pay a state income tax on his distributive share of the partnership profits, whether distributed or not. 6 Dart. La.Gen.St. (1939) § 8587.50, Act No. 21 of 1934, § 50. So, too, in Iowa, which has long recognized the partnership as a legal entity distinct from its members,[5] the state income tax law provides that an individual carrying on business in partnership "shall be liable for income tax only in his individual capacity and shall include in his gross income his share of the net income of the partnership during the income year." Iowa Code (1946) § 422.20, I.C.A. Section 422.-15 of the Code requires each partnership to make a return giving "the names and addresses of the individuals who would be entitled to share in the net income if distributed, and the amount of the distributive share of each individual."

What we have said in the preceding paragraph is not in conflict with a line of cases cited by appellant. National Carbide Corp.

5. Fitzgerald v. Grimmell, 1884, 64 Iowa 261, 264, 20 N.W. 179; Brumwell & Co. v. Stebbins Bros., 1891, 83 Iowa 425, 428, 49 N.W. 1020; Ruthven v. Beckwith & De Groat, 1890, 84 Iowa 715, 717, 45 N.W. 1073, 51 N.W. 153; Lansing v. Bever Land Co., 1912, 158 Iowa 693, 698, 138 N.W. 833; Bankers Trust Co. v. Knee, 1936, 222 Iowa 988, 993, 270 N.W. 438; Rubio Sav. Bank of Brighton v. Acme Farm Products Co., 1949, Iowa, 37 N.W.2d 16, 21.

v. Commissioner, 1949, 336 U.S. 422, 69 S. Ct. 726; Moline Properties, Inc., v. Commissioner, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Burnet v. Commonwealth Improvement Co., 1932, 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Klein v. Board of Tax Supervisors, 1930, 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679. Those cases merely held, as a matter of legislative intent expressed in the taxing statutes, that where persons had chosen to incorporate themselves (even including sole stockholders owning all the stock in a corporation), a separate taxable entity was thereby created, and the tax disadvantages of that choice could not be avoided by a judicial disregard of the "corporate fiction". In the case at bar, the legislative intent, as we have seen above, has been to attribute to the individual partners as taxable income their distributive share of partnership profits. Nor is. Rhode Island Hospital Trust Co. v. Doughton, 1926, 270 U.S. 69, 46 S.Ct. 256, 70 L.Ed. 475, 43 A.L.R. 1374, a controlling precedent here, though it is a constitutional holding. That case held that a state lacked the jurisdictional basis for imposing an inheritance tax upon shares of stock in a foreign corporation owned by a nonresident decedent. The stock certificates were not within the state at the date of the death; and the only asserted basis of jurisdiction to tax was that the foreign corporation owned certain property situated within the state, but this was deemed not enough, because under the applicable law of the state of incorporation the decedent shareholder had no ownership of or identifiable interest in any specific corporate property.

The Supreme Court of the United States has had frequent occasion to emphasize the broad, inclusive sweep of the definition of gross income in § 22(a) of the Internal Revenue Code, a definition similar in terms with that of gross income in § 15(a) of the insular income tax law. As stated in Corliss v. Bowers, 1930, 281 U.S. 376, 378, 50 S. Ct. 336, 74 L.Ed. 916, "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." See also Reinecke v. Smith, 1933, 289 U.S. 172, 177, 53 S.Ct. 570, 77 L.Ed. 1109; Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Commissioner v. Sunnen, 1948, 333 U. S. 591, 604, 68 S.Ct. 715, 92 L.Ed. 898. The language of Cardozo, J., in Burnet v. Wells, 1933, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L.Ed. 1439, is applicable here:

"Refinements of title have at times supplied the rule when the question has been one of construction and nothing more, a question as to the meaning of a taxing act to be read in favor of the taxpayer. Refinements of title are without controlling force when a statute, unmistakable in meaning, is assailed by a taxpayer as overpassing the bounds of reason, an exercise by the lawmakers of arbitrary power. In such circumstances the question is no longer whether the concept of ownership reflected in the statute is to be squared with the concept embodied, more or less vaguely, in common-law traditions. The question is whether it is one that an enlightened legislator might act upon without affront to justice. Even administrative convenience, the practical necessities of an efficient system of taxation, will have heed and recognition within reasonable limits. * * * Liability does not have to rest upon the enjoyment by the taxpayer of all the privileges and benefits enjoyed by the most favored owner at a given time or place. * * * Government in casting about for proper subjects of taxation is not confined by the traditional classification of interests or estates. It may tax, not only ownership, but any right or privilege that is a constituent of ownership. * * * Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis. A margin must be allowed for the play of legislative judgment."

In the present case we have a partnership composed of two brothers, each a managing partner. The business made

profits in the taxable years. It would be blinking realities to deny that each partner had a practical dominion over his distributive share in the partnership profits; that is, if either partner wished to draw out his share of the profits, it is most unlikely that his brother could, or would be disposed to, prevent it. The partnership agreement provided that "the partners shall distribute the profits" in the indicated proportions. We cannot see that partner Miguel would have done anything illegal if he, as managing partner, had taken out of the firm funds for his own personal account his own distributive share of the partnership profits. Cf. §§ 1584, 1585 Civil Code (1930 ed.). The decision to withhold distribution and to accumulate the profits in special reserve accounts of the partnership must have been made by the concurrence of the two partners. We see no inaccuracy in the following statement by the court below in its opinion: "From the moment that the profits were determined, they were at the disposal of the *socios* and the fact that they later agreed to put them in a profit and loss account, does not exempt them from the tax imposed by law. This could not have been done without the consent of all the *socios;* consequently, in our opinion, it is the same as if they, having received the profits, had assigned them to some other person or had disposed of them in any other manner."

It cannot be said that the legislature of Puerto Rico is playing the part of an arbitrary "despot", Burnet v. Wells, supra, 289 U.S. at page 682, 53 S.Ct. at page 761, 77 L.Ed. 1439, when it says in effect: "Individuals may join their capital and efforts to carry on a business in partnership, which partnership for certain purposes shall be recognized as a legal person; but when the business so conducted makes profits, we shall attribute to such partners, as taxable income, his distributive share of such profits." Even if the partners in this case had formed themselves into a private corporation, under the Act of March 9, 1911 (Laws P.R.1911, p. 93), as amended, the legislature would probably not have been precluded from taxing each of them on his pro-portionate share of the corporation profits. Helvering v. National Grocery Co., 1938, 304 U.S. 282, 288, 58 S.Ct. 932, 82 L.Ed. 1346.

So far, we have dealt with appellant's argument that the tax here imposed is invalid because the legislature was attempting to tax Miguel on income which was not in fact his but that of the partnership entity. This argument, if it were valid, would be available to the taxpayer even if the legislature had not also undertaken to tax the partnership on its net income. The further question then is, whether appellant is in a stronger position to resist his individual tax, because the legislature in § 28 of the Act, as amended, also laid a 17 per cent tax upon the net income of the partnership. This, again, is no novelty. In § 201 of the War Revenue Act of 1917, Congress imposed an excess profits tax upon the net income of partnerships, 40 Stat. 303. Having taken this taxable slice out of the partnership profits, Congress then taxed the remainder of the partnership net income to the individual partners, on their respective individual distributive shares therein, whether distributed or not. Section 8(e) of the Revenue Act of 1916, 39 Stat. 762. See Reid v. Rafferty, 2 Cir., 1926, 15 F.2d 264. So too in New York, where partnerships are not formally recognized as legal entities, a tax is imposed upon the net income of partnerships and other unincorporated businesses. 59 McKinney's N.Y.Consol.Laws, c. 60, Tax Law, § 386-a. See People ex rel. Tower v. State Tax Commission, 1940, 282 N.Y. 407, 409, 26 N.E.2d 955. Section 364 of the same tax law imposes an income tax on each partner on his distributive share, whether distributed or not, of the net income of the partnership.

■ The legislature here has chosen first to tax the partners in their collective capacity on the net income of Ballester Hermanos, and then to tax the partners individually on their distributive shares of what remains after payment of the partnership tax. In a sense, this is taxing the same income twice. But such double tax-

ation is not necessarily beyond the power of the legislature. Hellmich v. Hellman, 1928, 276 U.S. 233, 238, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379; Cream of Wheat Co. v. Grand Forks, 1920, 253 U.S. 325, 330, 40 S.Ct. 558, 64 L.Ed. 931. Whether the taxing power takes one big bite or two smaller bites is ordinarily not of significance under the due process clause. Looking at the aggregate of the taxes imposed upon the profits of the partnership, both that laid upon the partners individually and the tax laid upon the collective entity Ballester Hermanos, we cannot say that the imposition is so extreme as to amount to confiscation or spoliation of property under the guise of a tax, in violation of the due process clause. It is not even clear that the partners would have been better off under the income tax law prior to the 1941 amendment; for it might well be that the partnership would have had to pay the additional 50 per cent penalty tax on its net income in addition to the normal tax, upon a finding, under § 21, that the partnership had been availed of for the purpose of preventing the surtax upon its members through the means of permitting its profits to accumulate instead of being distributed.

█ Finally appellant argues that to impose on members of a sociedad a tax on the undivided profits of the entity, not imposed on members of corporations, violates the equal protection clause of the Organic Act. We think this is not so. With reference to equal protection, we said in Rivera v. Buscaglia, 1 Cir., 1944, 146 F.2d 461, 465: "While it has often enough been recognized that a statutory classification may be so invidious and lacking in rational basis as to offend the constitutional guaranties, the cases are few and far between in which a tax law has actually been invalidated on this ground. In the tax field, more than in any other, 'legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.' Madden v. Commonwealth of Kentucky, 1940, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 125 A.L.R. 1383."

It is true that corporations and partnerships are taxed the same on their net income under § 28. It is also true that when a corporation makes net profits, the shareholders are not taxable thereon except upon a *distribution* to them, out of corporation profits, by way of dividends; whereas under the law as construed, a partner is taxable upon his distributive share of the undivided profits of the partnership. It is asserted that this discrimination is without a rational basis, the assumption being that "In every substantial respect *sociedades* and corporations are alike." That assumption is widely inaccurate. Partnerships and corporations are formed under different provisions of law, and, typically, have many contrasting legal incidents, which are well understood. Shareholders of corporations have an advantage over partners with respect to limited liability, but they do not have the *delectus personarum* which is characteristic of partnerships. Corporations have the disadvantage of being under much stricter government supervision and regulation, as to their internal structure and management, as to the making of reports of their operations and financial condition, etc. The income tax law does, for purposes of that Act, include in the term "corporation" various fringe organizations, such as business trusts, which are not technically incorporated, but which carry on more or less in the manner of corporations. But as said in Burnet v. Wells, 1933, 289 U.S. 670, 681, 53 S.Ct. 761, 765, 77 L.Ed. 1439: "The line of division between the rational and the arbitrary in legislation is not to be drawn with an eye to remote possibilities. What the law looks for in establishing its standards is a probability and tendency of general validity. If this is attained, the formula will serve, though there are imperfections here and there." In the generality of cases, partners are likely to have more direct control over the management of a partnership than are shareholders over the management

of a corporation. It is not irrational to assume, therefore, that partners might more readily avail themselves of a partnership for the purpose of avoiding their individual surtaxes through the medium of permitting the partnership profits to accumulate instead of being distributed. The legislature, therefore, though content to rely upon § 21 of the Act to check this sort of thing, as applied to .corporations, might have reasonably concluded that it was best to remove this temptation from partners altogether, by providing that partners should in any event be taxed upon their distributive share of partnership profits whether the same are distributed or held in the partnership accounts.

The legislature is not obliged to treat on an equality all the distinctive types of business organization, either taxwise or otherwise. Individuals contemplating the formation of one or another of these various types of business organization will take into account, as applied to their own individual situations, the advantages and disadvantages of the various choices offered them. From the point of view of tax consequences, one form of organization may have advantages over others; thus, if the insular income tax law remains as amended, it may furnish an incentive to persons to incorporate rather than to form partnerships, despite the more stringent regulation to which corporations are subjected. In Perthur Holding Corp. v. Commissioner, 2 Cir., 1932, 61 F.2d 785, at page 786, the tendency of the tax provision in question might have been to discourage incorporation, but as stated by Learned Hand, J., the legislative body in general "is free to depress one kind of activity and promote another, for the incidence of taxation inevitably has indirect social and economic effects, and with them courts do not and must not, concern themselves. If these sections unduly discourage incorporation of such enterprises, Congress may have intended it, and was within its powers if it did. It is hard to conceive greater chaos than if judges were to upset fiscal policies of which they disapprove."

The judgment of the Supreme Court of Puerto Rico is affirmed.